## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAHEEMAH WHITMORE** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-6152** |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.* | : | |

**McHUGH, J.**                                                                                         **March 6, 2026**

### MEMORANDUM

This is an Eighth Amendment case brought by Plaintiff Raheemah Whitmore, who was detained twice during 2025 at the Philadelphia Industrial Correctional Center (PICC). She[1] claims her constitutional rights were violated in a variety of ways by three correctional officers and the City of Philadelphia. Defendants move to dismiss the Third Amended Complaint, arguing that Plaintiff's fourth attempt to state a claim continues to suffer from fatal flaws. The defense is correct, except for Whitmore's allegations that a correctional officer permitted her to be menaced by other inmates. The motion to dismiss will be granted as to all but one claim. And such dismissal will be with prejudice, as Whitmore has repeatedly failed to correct deficits in her complaint despite multiple opportunities to amend.

### I.      Relevant Background

Whitmore's first detention lasted from January 21 to January 31, 2025, and her second term from July 16 to September 18. *See* Compl. at 1.[2] That first detention was based on a bench warrant

---

[1] Whitmore is undergoing gender transition treatment. Whitmore's filings use she/her pronouns, so I will do the same.

[2] Complaint as used herein refers to the pending Third Amended Complaint, ECF 18.

issued in Delaware County, *id.* at 3 ¶ 8; [3] it is unclear why she was detained at PICC the second time.

During her first detention, she alleges an unknown Philadelphia Prisons employee made the decision to hold her at PICC longer than necessary before transferring her to Delaware County for a hearing on her bench warrant. Compl. at 2 ¶ 4. While in custody, Whitmore claims the staff denied her phone privileges and kept her confined to a cell longer than necessary, only placing her in general population when she started a flood in her cell in protest. Compl. at 4-5 ¶¶ 13, 17. They also allegedly failed to provide her the antidepressant Lexapro, leading to multiple panic attacks, and did not provide the testosterone which Whitmore takes as part of her gender transition. Compl. at 5-6 ¶¶ 17, 24. And because of Whitmore's status as a transgender person, she says Defendant Corrections Officer Bentley called her a "tranny" and brought five other inmates "to Whitmore's cell to harass her." Compl. at 4-5 ¶ 17.

During her second incarceration, Whitmore was housed apart from the general population, in a "quarantine unit," despite not being sick. Compl. at 2. Whitmore asserts this was done because of her transgender status. Compl. at 5 ¶ 19. This placement left her confined for twenty hours a day—compared to fifteen hours for the general population—and prevented Whitmore from participating in activities she desired, such as Bible study. Compl. at 5 ¶ 20. Whitmore claims her placement in quarantine amounted to false imprisonment in violation of the Fourth Amendment, and cruel and unusual punishment in violation of the Eighth Amendment. *Id.* ¶ 19.

---

[3] Because the paragraph numbering in the Complaint restarts at one point, and some paragraphs are not numbered at all, I will cite page numbers in addition to any paragraph numbers. Such deficits are striking considering that Plaintiff is represented by counsel.

## II.    Standard of Review

Within the Third Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III.   Discussion

To state a § 1983 claim, Whitmore must allege facts showing Defendants "acted under the color of state law and denied [her] a federally protected constitutional or statutory right." *Angelico v. Lehigh Valley Hosp.*, 184 F.3d 268, 277 (3d Cir. 1999).  Whitmore largely fails to identify what constitutional rights she claims were violated and fails to plead sufficient facts on the constitutional claims she manages to define.  As noted at the outset, only one claim survives: that Corrections Officer Bentley brought five inmates to her cell to threaten her.[4]

### A.  Dismissal is granted on all counts against the City of Philadelphia.

First, Whitmore has not adequately pled that the City of Philadelphia violated her constitutional rights.  Section 1983 permits no *respondeat superior* liability for a city or county for actions taken by that government entity's "employees or agents."  *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005).  Instead, a plaintiff must plead a "policy or custom" approved by the

---

[4] Each dismissed claim will be dismissed with prejudice.  Leave to amend is liberally granted, but is not warranted where "(1) the [party seeking amendment] has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *U.S. ex rel. Schumann v. Astrazeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014).  This is the third motion to dismiss, *see* ECF 9 & 12, and Whitmore has responded by insisting she has made a legally and factually sound Complaint.  *See* Pl.'s Resp., ECF 21.  Given the futility demonstrated, and prejudice to the City in having to repeatedly expend resources addressing deficient pleadings in a counseled case, I exercise my "discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them." *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002); *see also Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 74 (3d Cir.1994) ("Three attempts at a proper pleading is enough.").

municipality.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978).  A "policy" exists when a "policymaker," someone "possessing *final authority* to establish municipal policy with respect to the action[,] issues an *official proclamation, policy, or edict*;" meanwhile a "custom" develops when, "though not authorized by law, such practices of state officials [are] so *permanent and well settled* as to virtually constitute law."  *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (cleaned up) (emphases added).

Here, Whitmore has pled neither a policy nor a custom.  Whitmore calls Officer Bentley a policymaker, offering no factual support for the frivolous assertion that she would have final authority over the prison system's policies.  Compl. at 6 ¶ 23.  Whitmore also calls the two John Doe defendants policymakers, saying they "established the policy of subjecting Whitmore to the treatment she received at PICC."  Pl.'s Resp. at 3.  But *Monell* liability can only be supported by "official proclamation[s]" or "informal practices" that are sufficiently "permanent and well settled."  *Andrews*, 895 F.2d at 1480.  The conduct of line officers can hardly bind the City, and all counts against it are dismissed.

### B.  Dismissal is granted on all of Whitmore's claims except the claim about bringing inmates to her cell.

Most of Whitmore's remaining claims either do not describe constitutional violations or lack basic factual details.

#### 1.    *Anti-transgender slur*

First, Whitmore's claim that Officer Bentley called her a slur based on her transgender status does not plead a constitutional violation, however inappropriate such conduct would be. Verbal harassment of prisoners, including with demeaning language, does not violate the Constitution if it is unaccompanied by violence, threats, or other escalation.  *See, e.g., Oltarzewski*

*v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (finding allegations of vulgarity did not state constitutional claim); *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999) (collecting cases). While the Third Circuit has only addressed this issue in nonbinding, non-precedential opinions,[5] judges in this district have consistently agreed that verbal harassment alone is not enough.  *See, e.g.*, *Hailey v. Beard*, No. 19-cv-2171, 2020 WL 406654 at *12 (E.D. Pa. Jan. 24, 2020); *Jones v. Culinary Manager II*, 30 F. Supp. 2d 491, 498 (E.D. Pa. 1998).  Without any allegation that Officer Bentley escalated the situation beyond a degrading remark, this claim is dismissed.

### 2.    Denial of phone privileges

Relatedly, the claim that staff at PICC denied Whitmore phone privileges for ten days would not violate the Constitution.  In general, prison conditions violate a prisoner's "liberty interest" under the Fourteenth Amendment's Due Process Clause when they "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

To violate the Eighth Amendment, prisoners' conditions of confinement "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Once again, the Third Circuit has only addressed phone privileges in a non-precedential opinion,[6] but courts in this district have found no liberty interest in short-term denial of phone calls.  *See, e.g.*, *Concepcion v. Russell*, No. 21-cv-1060, 2021 WL 2529816, at *6 (E.D.

---

[5] *See, e.g.*, *Aleem-X v. Westcott*, 347 F. App'x 731 (3d Cir. 2009); *Sears v. McCoy*, 815 F. App'x 668 (3d Cir. 2020); *Salley v. Pa. Dep't of Corr.*, 181 F. App'x 258 (3d Cir. 2006).

[6] *See McDowell v. Litz*, 419 F. App'x 149 (3d Cir. 2011).

Pa. June 21, 2021) ("Given the brief time period that [inmate] was denied phone calls and the absence of any additional allegations about how that denial interfered with his ability to communicate, [inmate] has again failed to state a plausible claim").

The length of time certainly matters. Sustained or permanent denial of the ability to communicate outside the institution could conceivably support an Eighth Amendment claim. But here, as in *Concepcion*, Whitmore was denied phone privileges for only a few days and has not pled something more than inconvenience. That does not suffice for purposes of the Eighth Amendment.

### 3. *Type of cell and security classification*

For similar reasons, placement in the quarantine unit rather than general population does not violate the Eighth Amendment. The Third Circuit has held that "the Due Process Clause of the Fourteenth Amendment does not give a prisoner a liberty interest in remaining among the general prison population," nor in having a say about their specific choice of cell. *Sheehan v. Beyer*, 51 F.3d 1170, 1174-75 (3d Cir. 1995) (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)). And to the extent liberty interests may be created by state statutes governing the treatment of prisoners, *see Sandin v. Conner*, 515 U.S. 472, 483-84 (1995), Pennsylvania law also does not give prisoners a right to their preferred administrative placements. *See Johnson v. Hill*, 910 F. Supp. 218, 220 (E.D. Pa. 1996).

Under the controlling legal standard, Whitmore had no right to a general population placement or other preferred conditions during her first or second terms at PICC. And regarding Whitmore's assertion that "Prisons staff placed her there because of her transgender status," she does not elaborate on how that constitutes a constitutional violation. As the City points out, segregation from general population is an accepted technique in protecting prisoners who might

be at risk because of their transgender status, *Farmer v. Brennan*, 511 U.S. at 825, a fact underscored by Whitmore's allegations that she was harassed because she is transgender.

### 4.    *Delay in transfer on bench warrant*

Next, Whitmore has not adequately pled that she was held "longer than permissible" during her first term at PICC.   Compl. at 1.   She bases that conclusion on Rule 150 of the Pennsylvania Rules of Criminal Procedure, which requires conducting hearings on bench warrants "without unreasonable delay," and that when someone is arrested outside the county of the warrant's issuance, the arresting county "promptly shall notify" the county in which the warrant was issued. *See* Pa. R. Crim. P. 150.  Even assuming the Rule implicates a liberty interest, Whitmore does not plead that any Philadelphia official violated the Rule by failing to notify Delaware County, but only that her transfer could have been faster.  But she does not explain why it could have been faster, how a delay that "could have been faster" is inherently "unreasonable," or, more generally, how a few days' delay in transfer from one county's jail to another "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483–84 (1995).  Although Whitmore need not prove a violation at the pleading stage, she must include some facts plausibly supporting a violation of the law.

Whitmore also failed to plead that the delay in her transfer amounted to false imprisonment under the Fourth Amendment.  "[O]nly an unreasonable delay in a prisoner's *release* . . . will justify a finding of a constitutional violation under § 1983." *Burgess v. Roth*, 387 F. Supp. 1155, 1161 (E.D. Pa. 1975) (emphasis added).  Critically, however, Whitmore has not alleged a delay in

7

her *release*, only a delay in her transfer to the county that issued her bench warrant.[7]  There can be no false imprisonment where the prisoner was arrested with probable cause, *see Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (citing *Baker v. McCollan*, 443 U.S. 137, 143–44 (1979)), and probable cause exists under a valid bench warrant.  *See Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997).  Because Whitmore does not dispute the validity of the bench warrant that authorized her arrest, logically Whitmore has not described any false imprisonment.

> 5.    *Denial of drugs*

Finally, dismissal will be granted on Whitmore's claim that Defendants violated the Eighth Amendment by denying her Lexapro for her anxiety and testosterone for her gender transition. The Eighth Amendment forbids "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  And Whitmore adequately pled a serious medical need, at least for Lexapro, by describing the recurrent panic attacks she suffered without it during her first stay.  *See* Compl. at 6 ¶ 24.  Conversely, she fails to plead an injury resulting from lack of testosterone.  The problem is Whitmore does not make clear that anyone at the prison knew she needed Lexapro or testosterone.  Deliberate indifference requires actual knowledge.  *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).  If the prison staff did not know she needed the medications, they cannot have violated the Eighth Amendment by failing to provide them. Defendants' repeated motions to dismiss clearly address this defect in Whitmore's pleading, and she has failed to correct it, warranting dismissal.

---

[7] Likewise, Whitmore has pled no supporting reason for claiming false imprisonment in her second incarceration.

**C.  The motion is denied as to Whitmore's claim that Corrections Officer Bentley brought other inmates to Whitmore's cell to confront her.**

Prisons have a duty to protect the safety of the people they confine.  Despite many flaws in Whitmore's pleadings, she plausibly states a claim in alleging that Officer Bentley brought "five inmates to Whitmore's cell to harass her."  Compl. at 5 ¶ 17.  This pleads a violation of prisons' duty not to ignore clear risks to prisoners' health posed by other prisoners.  *See generally Helling v. McKinney*, 509 U.S. 25 (1993).  *Helling* involved a prisoner's claim that prison officials had, with deliberate indifference, bunked him with a chain smoker, exposing him to near-constant secondhand smoke.  *Id.* at 28.  The Supreme Court confirmed that "the Eighth Amendment protects against future harm to inmates," and so the prisoner did not need to wait for a harm to occur before challenging conditions of confinement that posed a clear risk to his health.  *Id.* at 33.

Finding such a harm requires two elements: first, unsafe conditions must be "objectively, sufficiently serious," and second, defendants must show deliberate indifference to those conditions, which in this case means the officer "knows of and disregards an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.  Among those risks are violence against prisoners by other prisoners.  *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991).  And the Supreme Court has found violations of the Eighth Amendment where prison officials acted with deliberate indifference to transgender prisoners' particular risk of being sexually and physically assaulted.  *See Farmer*, 511 U.S. at 850.

Whitmore's complaint alleges deliberate indifference to this very risk.  Whitmore says Officer Bentley brought the inmates "to her cell," which could mean either outside her cell or inside it.  The latter suggests a more direct threat to her physical health, but even the former could amount to a needless and intentional risk to Whitmore's safety as a transgender person behind

9

bars, because it singled her out for future abuse.  Defendants acknowledge such a risk when they point to *Farmer* to justify keeping Whitmore apart from the general population.  *See* Mot. to Dismiss at 10.  And contrary to Defendants' argument, Whitmore is specific enough about when the harassment occurred—during her first, ten-day incarceration.  Although no assault occurred, she pleads severe emotional distress. While Whitmore's description of Officer Bentley's alleged actions is far from detailed, it is sufficiently pled and, if proven, it could amount to a violation of her Eighth Amendment rights.

## IV.    Conclusion

For the reasons set forth above, Defendants' Motion will be granted on all counts except Whitmore's claim that Officer Bentley brought inmates to her cell to berate her.  An appropriate order follows.

 /s/ Gerald Austin McHugh  
United States District Judge

10